IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GOLDEN GATE LOGISTICS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:19-00854-CV-RK |
| | ) | |
| SELECTRUCKS OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant SelecTrucks of America ("SelecTrucks")'s Motion to Dismiss for Failure to State a Claim. (Doc. 4.) The Motion is fully briefed. (Docs. 4, 7, 8.) After careful consideration, the Motion is **GRANTED in part** and **DENIED in part**.

## Background

Golden Gate Logistics, Inc. ("Golden Gate") brings this action for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, and Failure of Essential Purpose. On February 14, 2017, Golden Gate purchased three Freightliner Cascadia trucks from SelecTrucks. The three trucks had VIN numbers ending respectively in 3402, 0490, and 0511. (Doc. 1-1.) Golden Gate also purchased three separate warranties on each truck: a Select Limited Warranty ("Limited Warranty"), a Select Extra Warranty ("Extra Warranty"), and a Select ATS Warranty ("ATS Warranty"). (*Id.*) Each warranty covered specific parts of the trucks. (Docs. 4-1, 4-2, and 4-3[1].) In early 2019, Plaintiff's trucks began to experience mechanical issues. (Doc. 1.) Truck 3402 experienced a catastrophic failure of the ERG Cooler. (Doc. 1, ¶ 11.) This resulted in coolant flooding the engine and causing the One-Box exhaust treatment system to fail. (*Id.*) SelecTrucks paid for the One-Box system, but refused to pay for the replacement of the ERG cooler. (*Id.*) Truck 0490 experienced a non-catastrophic failure of the ERG Cooler, resulting in a slow leak of coolant into the engine. (*Id.*, ¶ 12.) This too caused the One-Box exhaust treatment system to fail. (*Id.*) SelecTrucks paid for the One-Box system. However, because the problem with the ERG cooler went undiagnosed, the second One-Box system failed as well. (*Id.*) SelecTrucks refused

---

[1] The language of the contracts are virtually identical. From here on, the Court will only cite to one of the contracts, but the analysis is applicable to all three.

to pay for the second One-Box system or for the replacement of the ERG Cooler. (*Id.*) Truck 0511 required a new radiator, air conditioner, compressor, and water pump. (*Id.*, ¶ 13.) SelectTrucks refused to pay for any of those repairs.

**Legal Standard**

Federal pleading rules provide that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Each allegation in a pleading must "be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "No technical form" is required for pleadings, Fed. R. Civ. P. 8(d)(1), and the Court construes pleadings "so as to do justice[.]" Fed. R. Civ. P. 8(e).

Rule 8's pleading standard must be read in conjunction with Rule 12(b)(6), which tests a pleading's legal sufficiency. To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Arkansas Dept. of Human Serv.*, 850 F.3d 368, 371 (8th Cir. 2017) (internal quotation marks and citation omitted). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Id.* at 371 (citation omitted). When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

**Discussion**

SelecTrucks moves to dismiss all counts, arguing any applicable warranty had expired by 2019; implied warranties were expressly disclaimed; consequential damages were also disclaimed; and the sale contracts do not fail of their essential purpose. The Court will address each argument in turn.

## I. The Applicable Warranties Had Expired by 2019

To begin, the parties agree that Missouri law applies.[2] The parties' dispute primarily revolves around whether or not the applicable warranty period for the Extra Warranty was 18 months/150,000 miles ("18/150") or 36 months/300,000 miles ("36/300"). The critical language, on which the parties' dispute hinges, is on the three purchase agreements, one for each truck. (Docs. 1-1, 1-2, 1-3.) Below is a portion of the purchase agreement for truck 0490.

```
Vehicle In-Service Date:_____  Odometer:      320,395
AVAILABLE COVERAGE OPTIONS (check coverage purchased)
❶ SELECT LIMITED WARRANTY
Refer to the Select Limited Warranty Fact Sheet for complete coverage details.
   ☐ 48 months or 400,000 miles (644,000 km)        ☐ 12 months or 100,000 miles (161,000 km)
   ☒ 36 months or 300,000 miles (483,000 km)        ☐ 6 months or 50,000 miles (80,500 km)
   ☐ 24 months or 200,000 miles (322,000 km)
❷ SELECT EXTRA WARRANTY (optional)
May be purchased in addition to Select Limited Warranty listed above. Refer to the Select Extra Limited Warranty Fact Sheet for complete coverage details.
   ☒ 18 months or 150,000 miles (241,000km)   - available with 36/300 coverage on trucks below 450,000 miles/725,000 km
   ☐ 18 months or 150,000 miles (241,000 km)  - available with 24/200 coverage on trucks below 625,000 miles/1,000,000 km
   ☐ 12 months or 100,000 miles (161,000 km)  - available on trucks below 725,000 miles/1,170,000 km
   ☐ 6 months or 50,000 miles (80,500 km)
❸ SELECT ATS WARRANTY (optional)
Available for purchase when a minimum of 12/100 Select Limited Warranty and 12/100 Select Extra (listed above) are purchased. Refer to the Select ATS Limited Warranty Fact Sheet for complete coverage details (Only DTR-sourced trucks are eligible for coverage).
   ☒ 12 month or 100,000 miles (161,000 km)
I have been offered Select Extra Warranty and have chosen not to purchase it. _____(please initial)
I have been offered Select ATS Warranty and have chosen not to purchase it. _____(please initial)
PURCHASER ACKNOWLEDGEMENT
```

Under the heading Extra Warranty, the language states "18 months or 150,000 miles (241,000km) – available with 36/300 coverage on trucks below 450,000 miles/725,000 km." (*Id.*) SelecTrucks contends the language, taken as a whole and in context of the entire agreement, means the applicable Extra Warranty was only valid for 18 months or 150,000 miles. (Doc. 4.) Golden Gate on the other hand, argues the "available with" language means the Extra Warranty was extended to 36/300 coverage if the truck had fewer than 450,000 miles.

Contract interpretation is a question of law. *See generally State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. banc. 2017) (abrogated on other grounds by *Theroff v. Dollar Tree Stores, Inc.*, No. SC 97235, 2020 WL 203121 (Mo. banc. January 14, 2020)). Determining whether a contract is ambiguous is also a question of law for the court. *Parker v. Pulitzer Pub.*

---

[2] Both parties cite to Missouri law in their arguments even though the trucks appear to have been purchased in North Carolina. Therefore, the Court will apply Missouri law. A brief survey of North Carolina law does not reveal significant differences with Missouri law.

*Co.*, 882 S.W.2d 245, 249 (Mo. App. 1994); *Busch & Latta Painting Corp. v. State Highway Commission*, 597 S.W.2d 189, 197 (Mo. App. 1980). "The fact the parties disagree over the interpretation of a contract or a provision does not mean the contract is ambiguous." *Parker*, 882 S.W.2d at 249. An ambiguity only exists "when there is more than one *reasonable* interpretation which can be gleaned from the contract language." *Id.* (emphasis in original). "Accordingly, when a contract provision is susceptible to two interpretations, only one of which is reasonable, the reasonable interpretation should be given effect." *Id.*

On a motion to dismiss, the Court can consider the pleadings, matters incorporated by reference into the pleadings, matters integral to the claim, or items appearing in the record of the case. *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 903-04 (8th. Cir. 2017). Here, the purchase agreements, attached as exhibits to the Complaint, specifically reference warranty fact sheets, attached as exhibits to SelecTruck's motion to dismiss. (Doc. 4.) As such, the Court may consider both the purchase agreements and the fact sheets in ruling on the present motion.

Viewing the contract as a whole, the Court finds there is only one reasonable interpretation of the warranty provisions. The phrase "available with 36/300 coverage on trucks below 450,000 miles" plainly means that purchasing the 18/150 Extra Warranty was only allowed if Golden Gate also purchased the 36/300 Limited Warranty. The Extra Warranty was not extended to 36/300 coverage. Rather, the 36/300 language refers to the Limited Warranty which had to be purchased in order to buy the 18/150 Extra Warranty coverage.

This interpretation is the only reasonable interpretation for several reasons. First, the purchase agreements refer the purchaser to the fact sheet for "complete coverage details." The second paragraph of the Extra Warranty fact sheet states: "The Select Extra Limited Warranty specified program is *available* for the following coverage when purchased *in addition to* Select Limited Warranty (based on model year and mileage requirements)". (Doc. 4-1) (emphasis added). The fact sheet then lists the available coverage: 12/100 or 18/150. Nowhere on the fact sheet does it ever indicate 36/300 coverage is available for the Extra Warranty. Second, to construe the contract as Golden Gate argues would require the Court to ignore the clear 18/150 language. On the purchase agreement, there are four boxes which could have been checked. (Doc. 1-1.) None of those boxes provide a option for 36/300 coverage; rather one of the boxes, with 18/150 coverage, is checked. (*Id.*)

4

Plaintiff points out that there are two 18/150 options for the Extra warranty. (*Id.*) Plaintiff then argues without the "available with" language proceeding the two 18/150 options, such options would be redundant. (*Id.*) However, both options are not redundant when read in context of the whole contract. Immediately above, within the Limited Warranty section, there is both a 36/300 option and a 24/200 option. The two 18/150 options refer to the Limited Warranty purchased by a customer. Taken as a whole, the 18/150 Extra Warranty was available on trucks under 450,000 if the purchaser also purchased a 36/300 Limited Warranty. Similarly, the 18/150 Extra Warranty was available on trucks below 625,000 miles if the purchaser also purchased a 24/200 Limited Warranty. Therefore, for the three trucks, the Limited Warranty was for 36/300, the Extra Warranty was for 18/150, and the ATS Warranty was for 12/100.

The purchase agreements were signed on February 16, 2017. Accordingly, by September 2018, both the Extra and the ATS warranty had expired. The alleged mechanical failures occurred in 2019. The mechanical failures of Golden Gate's trucks were no longer covered by the Extra warranty or the ATS warranty as they both had expired.[3] Therefore, because no valid and applicable warranty existed for the alleged mechanical failures of Golden Gate's trucks, Count I will be dismissed.

## II. Implied Warranties Were Expressly Disclaimed, But Plaintiff Has Pleaded Unconscionability

Under Missouri law, the elements for breach of the implied warranty of merchantability are: "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or his property[,] (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Ragland Mills, Inc. v. General Motors, Corp.*, 763 S.W.2d 357-360 (Mo. App. 1989). "Implied warranties can be excluded but, under Missouri statute, must mention merchantability." *Johnson v. Honeywell Intern. Inc.*, No. 4:14CV598 RLW, 2015 WL 631361, at *5 (E.D. Mo. Feb. 12, 2015) (citing Mo. Rev. Stat. § 400.2-316(2)).

Here, the purchase agreement for each truck expressly disclaims "any warranty of merchantability or fitness for a particular purpose." (Docs. 1-1, 4-1.) SelecTrucks argues that the clear disclaimers within the contract satisfy all requirements of Mo.

---

[3] Although the Limited Warranty was still in effect, it did not cover the parts of the trucks at issue.

Rev. Stat. § 400.2-316(2). However, Plaintiff has alleged that such limitation provisions within the contract were unconscionable. (Doc. 1, ¶ 41.) Pursuant to Mo. Rev. Stat. § 400.2-302(2), "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence." "A finding of unconscionability is therefore 'to be based on evidence, rather than being decided on the pleadings.'" *Patterson Oil Co., Inc. v. Verifone, Inc.*, No. 2:15-CV-4089, 2015 WL 6149594, at *5 (W.D. Mo. Oct. 19, 2015) (citing *Bracey v. Monsanto Co., Inc.*, 823 S.W.2d 946, 949 (Mo. banc. 1992)). While SelecTrucks contends Golden Gate failed to plead any specific procedural or substantive unconscionability, "Missouri courts have eliminated all distinctions related to substantive and procedural unconscionability in adopting [a] more general framework." *Williams v. United Technologies Corp.*, No. 2:15-cv-04144-NKL, 2015 WL 7738370, at * 3 (W.D. Mo. Nov. 30, 2015) (citing *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492-93 (Mo. banc. 2012)). Therefore, on the current record, SelecTruck's motion to dismiss Count II will be denied.

### III. Consequential Damages were Disclaimed, But Plaintiff Has Pleaded Unconscionability

SelecTrucks argues consequential damages were also disclaimed. However, this argument fails for similar reasons as above. A court may disregard a limitation of remedy if the "remedy fails of its essential purpose or is unconscionable." *See Global Petromarine v. G.T. Sales & Mfg., Inc.*, No. 06-0189-CV-W-FJG, 2010 WL 5257659, at *8 (W.D. Mo. Dec. 17, 2010). Here, Golden Gate again has pled unconscionability. (Doc. 1, ¶ 48.) A finding of unconscionability should not be decided on the pleadings. *Patterson Oil Co., Inc.*, 2015 WL 6149594, at *5. As such, SelecTruck's motion to dismiss Plaintiff's allegations of consequential damages will be denied.

### IV. The Contracts Do Not Fail of Their Essential Purpose

Failure of essential purpose arises under Mo. Rev. Stat. § 400.2-719(2), which states, "[w]here circumstances cause an exclusive remedy to fail of its essential purpose, remedy may be had as provided in this chapter." "Under Missouri law, a sales agreement may provide for remedies in addition to or in substitution for those provided in the UCC and may limit or alter the measure of damages recoverable . . . unless the remedy fails of its essential purpose or is unconscionable." *Glob. Petromarine v. G.T. Sales & Mfg., Inc.*, No. 06-0189-CV-W-FJG, 2010 WL 5257659, at *8 (W.D. Mo. Dec. 17, 2010). When a warrantor fails to correct a defect within a reasonable time, replaces the product with another defective product, or refuses to provide an adequate replacement,

6

the remedy fails of its essential purpose. *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243, 247 (Mo. App. 1978); *Johnsen v. Honeywell Int'l Inc.*, No. 4:14CV594 RLW, 2015 WL 631361, at *7 (E.D. Mo. Feb. 12, 2015). Determining whether a remedy fails of its essential purpose is a fact intensive inquiry and should be decided on a full evidentiary record. *Trinity Products, Inc. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 332 (8th Cir. 2007) (citing *Bracey v. Monsanto Co.*, 823 S.W.2d 946, 949 (Mo. banc. 1992); *Zimmerman v. Gen. Mills, Inc.*, 327 F. Supp. 1198, 1202 (E.D. Mo. 1971)).

Here, Golden Gate has alleged SelecTrucks refused to pay for covered parts or the replacement of covered parts under the Extra Warranty, and as such the remedy failed of its essential purpose. (Doc. 1, ¶¶ 48, 51.) However, as discussed above, the applicable warranty had expired. As such, SelecTrucks was under no obligation to repair or replace the parts. The purpose of the remedy was to provide a warranty for a specified period of time, which it did. Because the repairs requested occurred outside of such time, the remedy did not fail its essential purpose. Therefore, Count III of Plaintiff's Complaint will be dismissed.

## Conclusion

Accordingly, and after careful consideration, SelecTruck's motion to dismiss is **GRANTED in part** and **DENIED in part**. More specifically, SelecTruck's Motion to Dismiss Counts I and III is **GRANTED**. SelecTruck's Motion to Dismiss Count II is **DENIED** without prejudice.

**IT IS SO ORDERED.**

                                                    s/ Roseann A. Ketchmark
                                                    ROSEANN A. KETCHMARK, JUDGE
                                                    UNITED STATES DISTRICT COURT

DATED: February 19, 2020